UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA ALLEN,<br><br>        Plaintiff,<br><br>    v.<br><br>BAYSHORE MALL, et al.,<br><br>        Defendants. | Case No. 12-cv-02368-JST   (JST)<br><br>**ORDER GRANTING LEAVE TO FILE SECOND AMENDED COMPLAINT**<br><br>Re: ECF No. 71 |

In this personal injury action, Plaintiff Jessica Allen moves for leave to file a second amended complaint to add a prayer for punitive damages. Mot., ECF No. 71. The Court will grant the motion.

## I.    BACKGROUND

Plaintiff alleges that on January 9, 2010, she was injured when ceiling material at Bay Shore Mall ("the Mall") in Eureka, California fell and struck her during an earthquake. First Am. Compl. ("FAC"), ECF No. 53 ¶ 14. She further alleges that at the time of the earthquake, Defendants General Growth Properties, Bay Shore Mall, and Rouse Properties "designed, constructed, owned, maintained, controlled, leased, managed, possessed and/or operated" the Mall. Id. ¶ 13. The FAC, filed on June 28, 2013, asserts two claims against Defendants: (1) negligence and (2) dangerous condition of property.

Plaintiff seeks leave to amend the complaint to add a prayer for punitive damages on the basis of recently discovered evidence that, according to Plaintiff, establishes that "Defendants were warned [fifteen] years before the earthquake in question that the ceiling presented a falling hazard and that the Defendants took no action to correct the hazard." Mot. at 2. In particular, Plaintiff points to a series of letters between third party Wiss Janney Elstner Associates, Inc., an

1  engineering consultant hired by Defendants to inspect the Mall after a 1994 earthquake, and
2  Defendant General Growth Properties. Defendants oppose the request on the grounds that the
3  proposed amendment is futile and prejudicial. Opp., ECF No. 76.

4       The first letter, dated December 28, 1994, was sent to Terry Paret at Wiss Janney by Stan
5  Saddoris, Senior Vice President of Operations at General Growth Properties. The letter requests
6  that the resulting report of a structural inspection of the Mall should be sent only to the Chairman
7  of General Growth Properties and Saddoris. Hennign Decl., ECF No. 72, Ex. A at 1.

8       The second letter is the report from that inspection, dated January 5, 1995. Id. at 2. It
9  indicates that Wiss Janney spent six hours at the Mall in December 1994, during which Wiss
10 Janney conducted a structural inspection and interviewed personnel familiar with the property and
11 concession operators. The report states that "no structural damage was noted" due to the 1994
12 earthquake. Id. However, it also identifies "potentially more serious conditions," including, under
13 the heading "Ceiling," the following: "throughout the mall experienced minor motion which
14 dislodged some acoustical tile as well as some decorative metal soffits. These need to be
15 thoroughly inspected for identification and removal of falling hazards." Id. at 2–3. The report
16 continues:

> It is our opinion that certain types of minor damage that are likely to continue to occur in future minor earthquakes, as well as major non-structural damage that is likely to occur during a more significant earthquake, can be addressed by adoption of a preventative maintenance approach rather than the reactive maintenance approach currently employed at the mall. . . . . Potentially more severe damage, such as that caused to the ceiling in the vicinity of the main mall rolling grille, is also preventable. This grille is no longer used and a portion of it swings freely and dislodges ceiling in every earthquake. In a more severe earthquake, the ceiling in this area may become severely damaged. We would recommend that the grille be removed to prevent damage in the future. If that is not feasible, then the grille should be completely retracted to prevent contact with the ceiling. In addition, the grille supports ought to be investigated to determine if they are adequate to withstand severe earthquake induced motion.

Id. at 3. Finally, the report concludes: "Of greater potential importance, General Growth is advised that in a more severe ground motion event, major portions of the ceiling are likely to be affected, and that falling hazards are like to be widespread . . . . As all of these items can

1  potentially present threats to occupant safety as well as cause prolonged business interruption, we
2  would recommend that they be investigated by qualified consultants familiar with their behavior in
3  earthquake[sic]." Id.

4  Also relevant to Plaintiff's motion is a March 27, 2000 letter attached to Defendants'
5  opposition to the motion, sent from Wiss Janney to General Growth Management of California,
6  Inc. Hamoy-Perera Decl., ECF No. 76-1, Ex. C. The letter states that Wiss Janney performed a
7  visual survey of the Mall to identify damage that may have been caused by an earthquake that
8  occurred near Eureka, California in March 2000. Id. at 1. The letter states: "Indications of minor
9  ceiling tile movement were observed at the edges and corners of ceiling panels but no tiles fell
10 from the ceiling." Id. It also states: "[A]s we have previously advised General Growth, there are
11 some areas of the mall that in our opinion are likely in need of attention to ensure that they do not
12 become hazardous to occupants or cause damage in a larger earthquake. These areas include the
13 heavy rolling grates over the main mall corridors, large HVAC equipment/ducts above the ceilings
14 of the main mall corridors, and pipes that run across the seismic joint between the main mall and
15 the food court." Id. at 2.

16 Plaintiff obtained all three letters in response to a third party subpoena to Wiss Janney.
17 The documents were not produced by any Defendant. Plaintiff's counsel's declaration sets forth
18 the relevant history that led to the discovery of the relevant documents. On February 25, 2013, the
19 Court continued all discovery deadlines due to the substitution of new Plaintiff's counsel, and set a
20 discovery deadline of September 15, 2013. ECF No. 35. On March 15, 2013, Plaintiff served
21 twenty-seven requests for production of documents on Defendants. Henning Decl. ¶ 6. Plaintiff
22 received initial responses to those requests on April 29, 2013. Id. Following a meet and confer
23 process, the parties filed a joint letter brief concerning Plaintiff's concerns over the sufficiency of
24 the responses, on July 3, 2013. ECF No. 56. The parties stipulated to continue the discovery
25 deadlines, setting a close of discovery of November 14, 2013, due to the addition of Defendant
26 Rouse Properties and the pending discovery dispute. ECF No. 60.

27 The Court referred the discovery dispute to Magistrate Judge Spero. ECF No. 57. The
28 parties resolved the dispute at an in-Court discovery meeting on July 25, 2013. Henning Decl. ¶ 8;

3

ECF No. 67. Defendants served amended responses in August 2013. Henning Decl. ¶ 9. Those responses disclosed, for the first time, the role Wiss Janney played in the "design and/or construction of the Bay Shore Mall." Id. Defendants produced some Wiss Janney documents, but the production did not include the letters at issue. Id. In that same month, Plaintiff issued a subpoena to Wiss Janney, responses to which were served in September 2013. Id. ¶ 10. On September 3, 2013, the parties stipulated to continue discovery deadlines by twenty-one days, setting a close of discovery of December 5, 2013, due to the recent resolution of the discovery dispute between them, which necessitated further discovery. ECF No. 69.

Plaintiff filed the instant motion for leave to amend on October 18, 2013. The motion is fully briefed, and the Court held a hearing on the matter on December 5, 2013.

## II.   JURISDICTION

The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). Plaintiff alleges she is a California citizen, Defendant General Growth Properties is a Delaware corporation with its principal place of business in Illinois, Defendant Bay Shore Mall is a Delaware corporation with its principal place of business in Illinois, and Defendant Rouse Properties is a Delaware corporation with its principal place of business in New York. FAC ¶¶ 1, 4–6. Plaintiff also alleges the amount in controversy exceeds $75,000. Id. ¶ 8.

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 15(a) permits a party to amend a pleading once "as a matter of course" within 21 days of serving it or within 21 days after a response to it has been filed. Fed. R. Civ. P. 15(a)(1). Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). A district court "should freely give leave" to amend a pleading "when justice so requires." Id. "This policy is to be applied with extreme liberality." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (citation omitted). "Four factors are commonly used to determine the propriety of a motion for leave to amend. These are: bad faith, undue delay, prejudice to the opposing party, and futility of amendment." DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987). "[D]elay, by itself, is insufficient to justify denial of leave to amend." Id. "Not all of the factors

merit equal weight . . . it is the consideration of prejudice to the opposing party that carries the greatest weight." Eminence Capital, 316 F.3d at 1052.

"The party opposing amendment bears the burden of showing prejudice." DCD Programs, 833 F.2d at 187. Generally, a court must make the determination of whether to grant leave "with all inferences in favor of granting the motion." Griggs v. Pace Am. Grp., Inc., 170 F.3d 877, 880 (9th Cir. 1999).

## IV. ANALYSIS

Defendants oppose amendment on the grounds of prejudice and futility. In particular, Defendants argue that Plaintiff's proposal to add a prayer for punitive damages now, at the close of discovery, is prejudicial because Defendants have not had an opportunity to request discovery on the issue. Second, Defendants argue that Plaintiff's proposed amendment would be futile because she cannot establish her entitlement to punitive damages.

### A. Prejudice

"A need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint." Lockheed Martin Corp. v. Network Solutions, Inc., 194 F.3d 980, 983 (9th Cir. 1999). Defendants argue that Plaintiff's proposed amendment is prejudicial because the deadline for expert discovery has passed and discovery closed on December 5, 2013. In support, Defendants state only that an amendment after the close of discovery would prevent them from retaining experts to rebut Plaintiff's claims. Defendants do not explain what experts they would retain, explain what discovery Defendants would seek, or identify the testimony they would elicit to respond to a prayer for punitive damages. Nor do Defendants explain how that information has not already been the subject of the parties' discovery efforts, given that any decision on the request for punitive damages will depend on evidence of the Defendants' knowledge, if any, of the weakness in the premises' ceiling, and Defendants' efforts to reinforce or repair that area — topics that are already at issue in the litigation. Lastly, Defendants cite no authorities in which courts have denied amendment on similar circumstances.

On this record, the Court concludes that Defendants' assertion of prejudice based on a need

for further, unspecified discovery after the discovery deadline has passed is unpersuasive. "The basic fact pattern will remain the same. All that is being added is another legal string to the same old bow." Navarro v. Eskanos & Adler, No. 06-cv-02231-WHA, 2006 WL 3533039, at *3 (N.D. Cal. Dec. 7, 2006) (allowing amendment to add new causes of action at end of discovery period based on deposition testimony revealing new facts where defendants failed to identify what additional discovery was necessary and relevant discovery had already been taken). See Barnes v. Orthofix Int'l NV, No. 11-cv-402-JCC, 2012 WL 1931224, at *2 (W.D. Wash. May 23, 2012) ("Plaintiff seeks only to add a [punitive damages] claim, but leaves the remaining claims unchanged. Defendant has failed to show that a minor amendment of this nature would amount to prejudice.").

Weighing further against a finding of prejudice is the absence of any indication that Plaintiff's delay was due to bad faith. Defendants did not disclose Wiss Janney's role in inspecting the Mall until August 2013, three months before the close of discovery, and Plaintiff promptly issued a subpoena to Wiss Janney, obtained the letters at issue, and moved to amend her complaint within a month. Defendants do not dispute the chronology of Plaintiff's discovery efforts, or argue that Plaintiff delayed too long in bringing her motion.

Consequently, the Court concludes that Defendants have failed to meet their burden of establishing prejudice.[1]

### B. Futility

"[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." Miller v. Rykoff–Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988). "However, denial [of a motion to amend] on this ground is rare and courts generally defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed." Clarke v. Upton, 703 F. Supp. 2d 1037, 1043 (E.D. Cal. 2010) (citing Nebula, LLC v. Distinct Corp., 212 F.R.D. 534, 539 (N.D. Cal. 2003)).

---

[1] In addition, as set forth below, the parties have agreed that the fact discovery deadline may be extended by approximately 45 days, which further cuts against a finding of prejudice.

6

In California, punitive damages are available to a plaintiff asserting a claim of negligence "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a). "Malice" includes "a willful and conscious disregard of the rights or safety of others." Cal. Civ. Code § 3294(b). "In order to justify an award of punitive damages on this basis, the plaintiff must establish that the defendant was aware of the probable dangerous consequences of his conduct, and that he wilfully and deliberately failed to avoid those consequences." Hasson v. Ford Motor Co., 32 Cal. 3d 388, 402 (1982) (quotation omitted).

Defendants argue that Plaintiff cannot establish that Defendants had knowledge of the letters. Defendants contend that the letters were sent only to General Growth Properties and that Plaintiff has no evidence that Bay Shore Mall had knowledge of them. Defendants also oppose Plaintiff's motion on the grounds that she cannot establish that Defendants deliberately failed to mitigate the ceiling hazards. Defendants claim that in the 2000 letter, Wiss Janney no longer believed that the ceiling presented a falling hazard because they did not mention it.[2] Defendants also point to the deposition of Mitchell Metheny of General Growth Properties, who testified that splay wiring was installed in the Mall's ceiling in 2004. ECF No. 76, Exh. D, at 147–48.

Each of these arguments goes to the weight of the evidence, not the futility of Plaintiff's proposed amendment. Whether Defendants had knowledge of the letters or had a reasonable belief that the Mall's ceiling did not present a falling hazard are issues for the trier of fact. "The merits or facts of a controversy are not properly decided in a motion for leave to amend and should instead be attacked by a motion to dismiss for failure to state a claim or for summary judgment." McClurg v. Maricopa Cnty., No. 09-cv-1684-PHX, 2010 WL 3885142, at *1 (D. Ariz. Sept. 30, 2010). Under Rule 15(a), "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the

---

[2] It would be difficult to conclude from the 2000 letter that Wiss Janney no longer had any concern about the ceiling, given that the letter incorporates Wiss Janney's previously-expressed concerns by reference. ECF No. 72, Ex. C ("[A]s we have previously advised General Growth, there are some areas of the mall that in our opinion are likely in need of attention to ensure that they do not become hazardous to occupants or cause damage in a larger earthquake.")

7

merits." Foman v. Davis, 371 U.S. 178, 182 (1962).  Here, the Court finds that Plaintiff sufficiently alleges such a claim based on the 1995 and 2000 reports from Wiss Janney.

Next, Defendants contend that there is no basis for asserting a claim for punitive damages against Rouse Properties.  Defendants argue that because Rouse Properties did not assume ownership or management of the Mall until after the 2010 earthquake occurred, there is no basis to suggest that Rouse Properties had knowledge of the letters.

Under California's doctrine of successor liability, the successor corporation assumes the liabilities of the predecessor if (1) there is an express or implied agreement of assumption, (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is a mere continuation of the seller, or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts.  Ray v. Alad Corp., 19 Cal. 3d 22, 28 (1977).  The parties make several unsupported assertions concerning the nature of the relationship between Rouse Properties, Bay Shore Mall, and General Growth Properties, and Defendants urge, without support or citation to authority, that successor liability is categorically unavailable in this case.  On the record before it, at the pleading stage, the Court cannot conclude as a matter of law that Plaintiff is not entitled to recover punitive damages from Rouse Properties because the issue is not ripe for adjudication.

### C. Defendants' Request for Discovery Continuance

At the hearing on Plaintiff's motion, the parties stipulated to a brief extension of the discovery deadlines so that each party may pursue discovery it perceives is necessary given the amendment of Plaintiff's complaint.  The parties agreed upon, and the Court ordered, an extension of the fact and expert discovery deadlines of forty-five days, to January 21, 2014.  The extension does not affect any other case deadlines.

/ / /

/ / /

/ / /

/ / /

/ / /

## V. CONCLUSION

Based on the foregoing, the Court hereby GRANTS Plaintiff's Motion for Leave to File a Second Amended Complaint. Plaintiff shall file her Second Amended Complaint within seven days from the date of this Order.

**IT IS SO ORDERED.**

Dated: December 8, 2013



_____
JON S. TIGAR
United States District Judge