UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA ALLEN,<br>    Plaintiff,<br>v.<br>BAYSHORE MALL, et al.,<br>    Defendants. | Case No. 12-cv-02368-JST<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br>Re: ECF No. 87 |

In this action for negligence and premises liability arising out of the injuries that a mall patron suffered when parts of the ceiling fell on her head, Plaintiff Allen moves for summary judgment on the issues of duty and breach as to her claim for premises liability. Defendants oppose the motion. For the reasons set forth below, the motion is DENIED.

## I.  BACKGROUND

### A.  The Parties and Claims

Allen alleges that on or about January 9, 2010, she was shopping at the Bayshore Mall in Eureka, California, when a piece of the ceiling fell, striking her in the head and other parts of the body. Second Am. Compl. ¶¶ 13-15. As a result, she sustained injuries to her head, neck, shoulders, arms, and hands. Id. ¶ 14. Allen avers that Defendant General Growth Properties knew, or in the exercise of reasonable care should have known, that the ceiling constituted a dangerous condition and unreasonable risk of harm, but that General Growth failed to take steps to either make the condition safe or warn her of it. Id. ¶ 25. Because she believes that the negligence of Defendants General Growth, Bayshore Mall, and Rouse Properties in the design, construction, and maintenance of the Bayshore Mall was the proximate and legal cause of her injuries, she brings a claim for negligence and a claim for premises liabilities against them.

B.   **Factual Background**

   1.   **The 1979 Uniform Building Code, Construction of the Bayshore Mall, and Installation of the Fire Suppression System**

In 1979, the Uniform Building Code ("UBC") adopted a standard that required acoustical tiles to be installed with 45 degree "sway bracing"[1] that prevents excess horizontal movement and falling of tiles during an earthquake. Kelley Decl. ¶¶ 5.b-c, ECF No. 89. In 1981, the City of Eureka passed Ordinance 347, adopting the 1979 UBC as the construction standard for all buildings in the city. Id. ¶ 5.e.

Bayshore Mall opened in 1987. Id. ¶ 5.a. Construction was completed in two parts. Construction on the southern three-quarters ("Phase I") began in 1987 and was not completed in compliance with the 1979 UBC. Id. ¶ 5.g. Construction on the northern one quarter ("Phase II") of the mall began in 1989 and used 45 degree sway bracing in compliance with the 1979 UBC. Id. ¶ 5.g.

In 1987, General Growth contracted with Calwest Fire Protection Engineering ("Calwest") to install a fire suppression system inside the Bayshore Mall ceiling. Id., Ex. C at 1, 22-25.[2]

   2.   **Inspections Before the 2010 Earthquake**

---

[1] While the briefs by both parties use the term "splay bracing," Kelley speaks of "sway bracing." There is no discussion in the record on whether these two terms are distinct or synonymous.

[2] Defendants contend that this document and the statements contained therein are inadmissible because the document is unauthenticated and the statements contained in it are hearsay. Allen contends that this document is "self-authenticating" under Federal Rule of Evidence 902(7) and that the statements are admissible under the hearsay exception for business records, Rule 803(6). Defendants' objections are well-taken. Even if the document itself were "self-authenticating" under Rule 902(7), Allen still has to show that the hearsay statements it contains are admissible. See 31 Wright & Miller, Fed. Prac. & Proc. Evid § 7134 (1st ed.) ("Even if the authentication requirement is satisfied, the item is not necessarily admissible."). Allen has not made this showing. The statements are not admissible under the business records hearsay exception because Allen's expert has no knowledge of the regular business practices of General Growth or Calwest. See Fed. R. Evid. 803(6). Allen also contends that this document was "produced in response to a subpoena and was provided with a statement of authenticity from [the] custodian of records," but does not provide a copy of the declaration that might establish that the document is a business record. Accordingly, the Court will not consider this document or the statements contained therein for any purpose in resolving this motion. This portion of the Court's order does not constitute a ruling regarding the admissibility of the document at trial.

After an earthquake struck Eureka in 1994, General Growth Management, which appears to be a different entity than Defendant General Growth Properties, asked the consulting firm of Wiss, Janney, Elstner Associates, Inc. ("WJE") to survey the damage that may have occurred to the Bayshore Mall as a result of a "recent earthquake." Id., Ex. D at 1.[3] WJE sent a letter to General Growth Management, Inc.'s Senior Vice President, Stan Saddoris, and copied it to Martin Bucksbaum, the Chairman of Defendant General Growth Properties, on January 5, 1995. Id. at 1, 3. WJE stated in the report that the "[c]eiling throughout the mall experienced minor motion which dislodged some acoustical tile as well as some decorative metal soffits. These need to be thoroughly inspected for identification and removal of falling hazards." Id. at 2. It further stated that "[o]f greater potential importance, General Growth is advised that in a more severe ground motion event, major portions of the ceiling are likely to be affected, and that falling hazards are like [sic] to be widespread." Id.

Another earthquake hit Eureka in 2000, and WJE performed a similar survey at General Growth's request. Hamoy-Perera Decl., Ex. 13 at 1. WJE produced a report dated March 17, 2000, in which WJE stated: "Indications of minor ceiling tile movement were observed at the edges and corners of ceiling panels but no tiles fell from the ceiling." Id. WJE also indicated that it "observed a number of above-ceiling universal braces, which are part of WJE's seismic retrofit. The universal braces observed were at areas currently undergoing renovation work. All the bracing rods, connections, bolts and truss chord extension members that were observed appeared

---

[3] Defendants contend that the letter and the statements it contains are inadmissible because (1) the statements are hearsay; (2) Allen improperly sought to authenticate the letter through her expert, Patrick Kelley, who has no personal knowledge of the matters stated therein; (3) Allen has not explained who Saddoris is; and (4) Allen does not point to evidence showing that Paret or Bucksbaum received the letter. Allen contends that the letter is "self-authenticating" under Federal Rule of Evidence 902(7) and that the statements are admissible under the hearsay exception for business records, Rule 803(6). Allen also contends that this document was "produced in response to a subpoena and was provided with a statement of authenticity from [the] custodian of records," but does not provide a copy of the declaration that might establish that the document is a business record. The Court finds that Defendants' objections are well-taken and concludes that the statements contained in the letter are inadmissible for the same reasons that the statements in Exhibit C are inadmissible. Accordingly, the Court will not consider these statements for any purpose in resolving this motion. This portion of the Court's order does not constitute a ruling regarding the admissibility of the document at trial.

intact and showed no signs of movement." Id. Further, WJE advised:

> However, as we have previous advised General Growth, there are some areas of the mall that in our opinion are likely in need of attention to ensure that they do not become hazardous to occupants or cause damage in a larger earthquake. These areas include the heavy rolling grates over the main mall corridors, large HVAC equipment/ducts above the ceilings of the main mall corridors, and pipes that run across the seismic joint between the main mall and the food court. We recommend an evaluation of the rolling grates and HVAC equipment for adequate bracing and of the pipers for their ability to accommodate movement during a large earthquake.

Id. at 2. WJE did not advise General Growth to install splay bracing for the mall ceiling in this report. See id.

### 3. Inspections After the 2010 Earthquake

After the 2010 earthquake in Eureka, the engineering firms SHN Consulting Engineers & Geologists, Inc. ("SHN") and Ficcadenti, Waggoner & Castle Consulting and Structural Engineers ("FWC") each surveyed the damage to the Bayshore Mall and produced reports dated January 22, 2010, and January 20, 2010, respectively. See Kelley Decl. Ex. E & F.[4]

The SHN report stated: "During inspection of the roof support structures situated above the suspended ceiling in the mall-way section of the building, it was observed that the suspended ceiling system in the southern three quarters of the mall-way was not properly braced for seismic events." Id., Ex. E at 4. Similarly, the FWC report noted: "The soffit [holding the ceiling tile in place] was designed/built without detailing for compression posts and adequate splay bracing to resist seismic loading." Id., Ex. F at 2. The FWC report also noted: "We have reviewed a stamped and signed retrofit detail provided by SHN Consulting Engineers & Geologists, Inc. dated 1/12/2010 (see attached) that addresses adding compression posts and splay wires. . . . Field

---

[4] Defendants contend that these documents and the statements contained therein are inadmissible because the documents are unauthenticated and the statements they contain are hearsay. Allen contends that these reports are "self-authenticating" under Federal Rule of Evidence 902(7) and that the statements are admissible under the hearsay exception for business records, Rule 803(6). The Court finds that the statements are inadmissible for the same reasons that the statements discussed above are inadmissible. Accordingly, the Court will not consider them for any purpose in resolving this motion.

4

observation showed that work has begun on this retrofit of the soffit . . . ." Id. It also stated that "it is our opinion that this retrofit will help add stabilization to the acoustic panels as well as bring the soffit in line with current building code prescriptive minimum detailing for 'T' bar ceilings." Id. However, it further stated: "Prevention of falling of the acoustic panels during a future large seismic event cannot be guaranteed without some form of direct connection (screws, glue, etc.) between the panels and the T-bar grid, but these measures are not required by code and are not typical for this type of assembly." Id.

### 4. Testimony

General Growth's expert, Kevin Moore, opined that the Phase I portion of the mall ceiling was designed in compliance with the UBC. Hamoy-Perera Decl., Ex. 15, Moore Dep. at 136:18-137:2. Moore also explained that in 1987 there was no UBC requirement that the suspended ceiling system be inspected prior to the opening of the mall. Id. at132:13-23, 136:5-14. He further testified that no inspection of the ceiling would have been required at any time after the City of Eureka issued the certificate of occupancy. Id. at 163:1-8.

Mitch Metheny, the operations manager at the mall, also testified. He stated that he personally observed splay wires in the Phase I area on several occasions from 2004 to 2010. Hamoy-Perera Decl., Ex. 2, Metheny Dep. at 147:25-148:10. Metheny also states that he is not aware of any investigations modifications to the suspended ceiling after the 1995 WJE report. Id. at 144:3-25.

Finally, the testimony of Kent Sasaki, an engineer at WJE, shows that in approximately 1990, WJE was hired to develop a seismic retrofit plan for the mall, which included installation of structural seismic bracing throughout the mall. Hamoy-Perera Decl., Ex. 14, Sasaki Dep. at 23:8-24:2. Similar to Metheny, Sasaki did not know if General Growth implemented the suggestions in the 1995 WJE report. See id. at 90:12-19. Sasaki further testified that after 1995, even if a ceiling grid were designed and constructed in accordance with the current UBC, it did not mean that ceiling tiles would not fall in an earthquake. Id. at 115:5-116:2. Terrence Paret, another WJE engineer, also testified that he did not know if General Growth followed the suggestions in the 1995 WJE report. Hamoy-Perera Decl., Ex. 10, Paret Dep. at 52:8-16. 60:24-61:16.

## II. LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to depositions, documents, affidavits, or other materials. Fed. R. Civ. P. 56(c)(1)(A). A party also may show that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is "genuine" only if there is sufficient evidence for a reasonable fact-finder to find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). A fact is "material" if the fact may affect the outcome of the case. Id. at 248. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997).

"When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000) (citation and internal quotation marks omitted). Where the party moving for summary judgment would not bear the burden of proof at trial, that party bears the initial burden of either producing evidence that negates an essential element of the non-moving party's claim, or showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party satisfies its initial burden of production, then the non-moving party must produce admissible evidence to show that a genuine dispute of material fact exists to defeat the motion. Id. at 1102-03.

The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996). Indeed, it is not the duty of the district court to "to scour the record in search of a genuine issue of triable fact." Id. "A mere scintilla of evidence will not be sufficient to defeat a properly supported motion for

summary judgment; rather, the nonmoving party must introduce some significant probative evidence tending to support [its position]." Summers v. Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997) (citation and internal quotation marks omitted).  If the non-moving party fails to make this showing, the moving party is entitled to summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

**III.  DISCUSSION**

Allen moves for summary judgment as to the elements of breach and duty in connection with her claim for premises liability.

"The elements of a cause of action for premises liability are the same as those for negligence: duty, breach, causation, and damages." Castellon v. U.S. Bancorp, 220 Cal. App. 4th 994, 998 (2013) (citation omitted).

The Court will deny the motion.

**A.  Duty**

"It is well established in California that although a store owner is not an insurer of the safety of its patrons, the owner does owe them a duty to exercise reasonable care in keeping the premises reasonably safe." Ortega v. Kmart Corp., 26 Cal. 4th 1200, 1205 (2001).  "A store owner exercises ordinary care by making reasonable inspections of the portions of the premises open to customers, and the care required is commensurate with the risks involved." Id.  Under a premises liability theory, "the owner's actual or constructive knowledge of the dangerous condition is a key to establishing its liability.  Although the owner's lack of knowledge is not a defense, [t]o impose liability for injuries suffered by an invitee due to [a] defective condition of the premises, the owner or occupier must have either actual or constructive knowledge of the dangerous condition or have been able by the exercise of ordinary care to discover the condition, which if known to him, he should realize as involving an unreasonable risk to invitees on his premises[.]" Id. (citations and internal quotation marks omitted).  "Knowledge may be shown by circumstantial evidence which is nothing more than one or more inferences which may be said to arise reasonably from a series of proven facts." Id.  It is a "question of fact for the jury whether, under all the circumstances, the defective condition existed long enough so that it would have been

discovered and remedied by an owner in the exercise of reasonable care." Id. at 1213.

Allen moves for summary judgment on the issue of duty on the theory that Defendants should have known that the condition of the ceiling at the Bayshore Mall was hazardous before the date of her injuries. The Court has already found much of the evidence Allen submits in support of this theory to be inadmissible. Moreover, Defendants have submitted evidence from which a reasonable jury could find that Defendants satisfied their duty of inspection, and that they were not aware of a hazard sufficient to trigger a duty to repair or warn. For example, Defendants' expert Kevin Moore opined that the mall's ceiling complied with the building code, and that even if the Phase I portion of the mall ceiling had been designed and constructed similarly to the Phase II portion, that might not have prevented Allen's injury. Also, even if Plaintiff's excluded evidence were admissible, Moore disagrees about the extent to which the WJE letters either placed Defendants on notice of a hazardous condition in the ceiling or recommended that Defendants take steps to remedy such hazard.

Because there remains a triable issue of material fact as to whether Defendants knew that the ceiling was in a hazardous condition, Allen's motion for summary judgment that Defendants "owed to her a duty to warn of, or make safe, the hazardous condition of the ceiling" is DENIED.

### B. Breach of Duty

Because Allen has not established duty, her motion for summary judgment on the issue of breach also must be DENIED.

## IV. CONCLUSION

Allen's motion for summary judgment is DENIED in its entirety.

**IT IS SO ORDERED.**

Dated: April 23, 2014

_____
JON S. TIGAR
United States District Judge

8